**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAYMOND BRONOWICZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1023 |
| | ) | Judge Nora Barry Fischer |
| ALLEGHENY COUNTY, PROBATION | ) | |
| OFFICER KAREN OLLIS, PROBATION | ) | |
| OFFICER JEFFREY CIMA, THOMAS | ) | |
| MCCAFFREY, Director of Allegheny County | ) | |
| Adult Probation and JUDGE DONALD E. | ) | |
| MACHEN, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

This is a civil rights action for money damages wherein Plaintiff Raymond Bronowicz ("Plaintiff") alleges that he was ordered to serve two separate "illegal" periods of incarceration (from July 14, 2008 to July 2, 2009 and November 22, 2010 to May 3, 2012) after his probation was revoked on two different occasions by the Court of Common Pleas of Allegheny County at case number CP-02-CR-0015065-1999. (Docket No. 52). In his Second Amended Complaint, Plaintiff maintains that the revocation of his terms of probation and service of said sentences were caused by Constitutional violations and/or tortious actions allegedly committed by Defendants Allegheny County, Probation Officer Karen Ollis, Probation Officer Jeffrey Cima, Thomas McCaffrey, Director of Allegheny County Adult Probation and the Honorable Donald E. Machen of the Court of

Common Pleas of Allegheny County. (*Id.*). Defendants have filed three separate Motions to Dismiss challenging Plaintiff's Second Amended Complaint, all of which Plaintiff opposes and have been exhaustively briefed by the parties. (Docket Nos. 57-58, 60-61, 65-66, 69, 72-73, 75). Upon consideration of all of the parties' arguments and for the following reasons, Defendants' Motions to Dismiss [57], [60], [65] are granted and Plaintiff's Second Amended Complaint [52] will be dismissed.

## II. FACTUAL BACKGROUND

The facts of the instant lawsuit surround Plaintiff's criminal case in the Court of Common Pleas of Allegheny County pursuant to which he has been sentenced to various periods of incarceration and probation on the initial charges and his terms of probation were later revoked on three subsequent occasions due to violations for which he was sentenced to additional periods of incarceration and probation. (Docket No. 52). In his Second Amended Complaint, Plaintiff exhaustively recounts the full procedural history of the underlying criminal case starting with the initial charges being filed on July 5, 2000 and continuing until he was released from custody on May 1, 2012. (*Id.*). Throughout his Second Amended Complaint, Plaintiff complains that certain actions taken during this lengthy period of time at different stages of the criminal proceedings were "illegal" or violated his rights for various reasons. (*Id.*). Although such assertions constitute legal conclusions, which the Court does not credit in deciding the instant motions to dismiss, for completeness and to provide context for the Court's decisions, the full breadth of the factual allegations raised by Plaintiff are recounted herein. *See Pearson v. Tanner*, 513 F. App'x 152, 154 (3d Cir. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)) (court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to

dismiss.").

> A.    *Initial Charges – June 6, 2001 Sentencing*

On July 5, 2000, Plaintiff was charged in a ten-count Information with: one count of aggravated assault; one count of aggravated harassment by prisoner; two counts of terroristic threats; one count of driving under the influence; one count of resisting arrest; three counts of simple assault; and one count of disorderly conduct.  (Docket No. 52 at ¶ 11).  With the assistance of his then-counsel, Kevin Zinski, Esquire, Plaintiff entered into a negotiated plea agreement with the District Attorney's Office on February 27, 2001.  (*Id*. at ¶ 12).  Pursuant to this plea agreement, Plaintiff pled guilty to eight of the counts of the Information while the aggravated assault and aggravated harassment by prisoner counts were withdrawn.  (*Id*. at ¶ 12).

Plaintiff's sentencing as to this case was held on June 6, 2001.  (*Id.* at ¶ 13).  He was sentenced as follows:

- Count one, aggravated assault, was withdrawn per the parties' plea agreement.
- Count two, aggravated assault, was withdrawn per the parties' plea agreement.
- Count three, terroristic threats, no further penalty was imposed.
- Count four, terroristic threats, he was sentenced to five (5) to ten (10) months incarceration, effective June 6, 2001, with credit for time served from October 28, 1999 to May 5, 2000, and a term of probation of five (5) years, also effective June 6, 2001.
- Count five, driving under the influence of alcohol, he was sentenced to ninety (90) to one hundred eighty (180) days incarceration, effective June 6, 2001, with credit for time served.  Said sentence at count five was ordered to run concurrently to the sentence at count four, terroristic threats.
- Count six, resisting arrest, he was sentenced to no further penalty.
- Count seven, simple assault, no further penalty was imposed.
- Counts eight and nine, simple assault, he was sentenced to two years of probation for each count, to be served concurrently to each other and the sentence at count four, terroristic threats.

- Count ten, disorderly conduct, he was sentenced to no further penalty.

(*Id.* at ¶ 14). Plaintiff then served the terms of imprisonment set forth in this initial judgment and was released on probation. (*Id.* at ¶ 15).

B.     *First Violation Case – July 21, 2005 Revocation and Sentencing*

On July 21, 2005, Plaintiff appeared before Judge Machen for a hearing on alleged probation violations. (*Id.* at ¶ 16). He was represented by counsel, Public Defender Kevin McClintock, at that time. (*Id.*). Plaintiff alleges that ADA Stephie-Anna Kapourales and/or Probation Officers Ollis and Cima "rearranged the charges in the original information filed against Plaintiff such that it appeared he was sentenced to counts to which no penalty was assessed originally and pursuant to the plea agreement signed by Plaintiff." (*Id.*). He further maintains that such actions were taken "outside [their] duties as a prosecutor/probation officer." (*Id.* at ¶ 17). To this end, he suggests that the driving under the influence count, which was initially charged at Count Five of the Information, was marked inappropriately as Count One during this proceeding. (*Id.* at ¶ 18). He also avers that he was subject to violations at Count Three, terroristic threats, although he was initially sentenced to "no further penalty" at that count. (*Id.*).

Judge Machen revoked Plaintiff's probation and sentenced him to the following:

- Count one, driving under the influence of alcohol, he was sentenced to eleven and one-half (11 ½) to twenty-three (23) months incarceration, with alternative housing permitted, and a consecutive term of probation of three (3) years, effective June 28, 2005.
- Count three, terroristic threats, he was sentenced to five (5) years' probation, consecutive to the period of probation imposed on the driving under the influence charge.

(*Id.*). Plaintiff maintains that both sentences were "illegal." (*Id.*).

C.     *Second Violation Case – July 20, 2010 Revocation and Sentencing*

4

Plaintiff was released to house arrest on December 20, 2005. (*Id.* at ¶ 20). He contends that his "legitimate sentence was set to expire on June 28, 2008" but that the improper sentence imposed upon count three, which was assessed no further penalty in 2001, illegally extended Plaintiff's probation for an additional two (2) years. (*Id.* at ¶ 20). Then, on July 8, 2007, Plaintiff was arrested on other charges, including driving under the influence, harassment, criminal mischief among others. (*Id.* at ¶ 21). A bench warrant was issued on July 11, 2008, alleging that Plaintiff had again violated the terms of his probation. (*Id.* at ¶ 22).

Plaintiff appeared before Judge Machen for another revocation and sentencing proceeding on these violations on July 20, 2010. (*Id.* at ¶ 23). At that time, he was sentenced to a term of imprisonment of one (1) year, five months and eight days, effective March 15, 2010, with credit from July 14, 2008 through July 2, 2009 and April 28, 2007 through June 12, 2007 on the driving under the influence conviction. (*Id.*). Plaintiff admits that this conviction was properly numbered as "count five" on the violation judgment as it had been in the original Information. (*Id.*). He was paroled "forthwith" on this conviction, which he contends means that "the Court concluded its interest in the DUI charge." (*Id.*). The violation judgment also reflects that Plaintiff was "continued forthwith" on his conviction at count four, terroristic threats. (*Id.*). Plaintiff suggests that this aspect of the sentence was illegal because he "was assessed no further penalty on that charge in the original plea agreement from 2001." (*Id.*). Plaintiff was ultimately released from incarceration on July 27, 2010. (*Id.*).

D.      *Third Violation Case – January 19, 2011 Revocation and Sentencing*

Sometime shortly after Plaintiff was released from custody, he reported, in person, to the

Probation Department to check in. (*Id.* at ¶ 24). He alleges that he was advised by Probation Officer Mark Wilner that he was not required to "come around anymore," which he believed meant that he was not required to report for probationary visits since he was no longer on probation. (*Id.*). Plaintiff further avers that because Defendants Cima and Wilner worked at the same probation office, Cima "was aware of the same information as Wilner." (*Id.* at ¶ 25). Plaintiff also maintains that because he was no longer on probation, the Defendant Probation Officers (Cima and Ollis) had no authority to detain him for alleged violations of probation conditions. (*Id.* at ¶ 26).

On November 10, 2010, Defendant Cima placed a note on Plaintiff's residence advising him to report to the probation office. (*Id.* at ¶ 27). Plaintiff states that he "felt compelled to appear as directed by" Cima but did not believe that he was on probation at the time. (*Id.*). Plaintiff avers that Cima's intent was that he should be seized, despite the fact that Wilner had "essentially released" him from his probationary sentence and advised him that he was not subject to probationary conditions. (*Id.* at ¶ 28).

When Plaintiff arrived at the probation office, he was immediately handcuffed by Cima for allegedly "smoking crack." (*Id.* at ¶ 29). Cima then contacted Defendant Ollis, who recommended that Plaintiff be incarcerated. (*Id.*). Plaintiff claims that he was not drug tested nor advised of his legal rights by the officers. (*Id.*). He contends that he requested that the officers provide him with any test results showing that he had used controlled substances, but they rejected these requests. (*Id.*). Plaintiff also alleges that he told Cima that Wilner had already explained to him that he was no longer subject to probationary terms because they had expired and that his seizure was not lawful. (*Id.*). However, Cima ignored these statements. (*Id.*).

On November 30, 2010, a bench warrant was issued for Plaintiff's arrest alleging that he

violated the terms of his probation. (*Id.* at ¶ 30). He remained incarcerated in the Allegheny County Jail when the warrant issued. (*Id.*). Plaintiff avers that Ollis provided information in order to cause Plaintiff to be incarcerated although she had no proof of her claim that he violated any condition of probation or to arrest him for any reason. (*Id.*). Indeed, Plaintiff suggests that it was impossible for him to have violated his probation because his term of probation had expired as of the July 20, 2010 hearing and he could not have violated a non-existent probationary term. (*Id.*).

No further action was taken on the case for some time. On January 18, 2011, Plaintiff met with Gary Gerson, Esquire, concerning his case. (*Id.* at ¶ 34). Gerson informed Plaintiff that he was unavailable to be present for a scheduled revocation hearing on January 19, 2011. (*Id.*). Gerson further advised that the probation office wanted Plaintiff enter into a plea agreement whereby he would be sentenced to an eighteen (18) to thirty-six (36) month term of incarceration for his November 2010 violation. (*Id.*). Plaintiff maintains that he told Gerson that such an offer was "crazy" and that he would not agree to it because his term of probation had expired. (*Id.*). During this discussion, Plaintiff was adamant that he would refuse any further period of incarceration. (*Id.*).

The next day, Plaintiff was transported to the Allegheny County Courthouse for his violation hearing. (*Id.* at ¶ 35). He was placed in the "bullpen" area within the courthouse where inmates are placed while they await their hearing or trial. (*Id.* at n.2). Plaintiff met with Ollis briefly in the bullpen. (*Id.* at ¶ 35). Gerson was not present given his inability to appear as he had previously disclosed to Plaintiff.[1] (*Id.*). Ollis advised him that she had spoken with Gerson and that an agreement was reached whereby Plaintiff would spend eighteen (18) to thirty-six (36) months in jail. (*Id.*). Given this deal, she also told him that he did not need to appear for the hearing. (*Id.*).

Plaintiff claims that he "adamantly protested" the deal proposed by Ollis. (*Id.* at ¶ 36). He alleges that he told her that his attorney was not present, that she had no authority to recommend or impose a sentence and that his incarceration was illegal. (*Id.*). Plaintiff then commented, "let's see what the Judge says" to which Ollis allegedly retorted, "You ain't seeing no Judge, you get two (2) months credit, that's it. You're going to SCI." (*Id.* at ¶ 37). Ollis then ended the conversation and walked away. (*Id.*). Plaintiff recalls that a sheriff/deputy was near them during this exchange and commented to him that "She can't do that, she's no judge." (*Id.* at ¶ 38).

Plaintiff alleges that a hearing was held before Judge Machen on January 19, 2011. (*Id.* at ¶ 41). According to Plaintiff, the hearing was held *in absentia* because he was not present but remained in the bullpen area. (*Id.*). Indeed, he avers that Ollis was the only person present before Judge Machen during the hearing. (*Id.*). At that time, Ollis presented the purported plea agreement to Judge Machen and he then sentenced Plaintiff pursuant to said agreement. (*Id.*). The violation judgment provides that Plaintiff was sentenced at count five, resisting arrest, to a term of incarceration of eighteen (18) to thirty-six (36) months. (*Id.*). Plaintiff, however, contends that the resisting arrest conviction was in the original Information as count six and no further penalty was assessed at the initial sentencing on June 6, 2001. (*Id.*). As such, Plaintiff maintains that his sentence had expired nearly 10 years before the hearing and that he could not have been sentenced to incarceration for any violation associated with that conviction. (*Id.*).

Plaintiff alleges that prior to the hearing ADA Kapourales and/or Defendant Probation Officers rearranged charges from the original information, such that it appeared that counts that were withdrawn or assessed no further penalty were available to support probation violation claims. (*Id.*

---

1        Plaintiff avers that he has had no further contact with Attorney Gerson, despite repeated attempts to contact him

at ¶ 43).  He alleges that such actions were taken outside their duties as a prosecutor and/or quasi-prosecutor.  (*Id.*).

E.    *Plaintiff's Appeal to Superior Court*

Plaintiff appealed his sentence to the Superior Court of Pennsylvania.  (*Id.* at ¶ 44).  Assistant Public Defender Jessica L. Herndon represented him on appeal.  (*Id.* at ¶ 47).  She set forth numerous alleged errors by the trial court during the January 19, 2011 sentencing on Plaintiff's behalf.  (*Id.*). Among them, Assistant Public Defender Herndon argued that the sentence was illegal because Plaintiff was not subject to probation at the time of the hearing; that Plaintiff's rights were violated because he did not have counsel present on his behalf; and was not permitted to be present for the proceeding.  (*Id.*).  In response to his appeal, the Allegheny County District Attorney's Office conceded that the trial court erred.  (Exhibit B, Docket No. 52-2).  Specifically, the DA's Office admitted that Plaintiff's due process rights were violated when he was sentenced without his presence or the presence of counsel and without any record being made of the proceedings.  (Docket No. 52-2 at 13).  The DA's Office further agreed that the sentence which was imposed was illegal given the history of the charges, convictions, violations and the sentences imposed.  (*Id.* at 18-23). "After Plaintiff filed an appeal of his revocation of probation, only a Statement in Lieu of Opinion Pursuant to Pa. R. App. Pro 1925(a) was filed by the Court, authored by Defendant Judge Donald E. Machen and dated June 28, 2011.  In this Statement, Defendant Judge Machen stated that the sentence he imposed was a 'consent agreement between [Plaintiff] under advisement from counsel, and Ollis.'"  (Docket No. 52 at ¶ 44).

F.    *Superior Court's Decision*

---

while he was incarcerated.  (Docket No. 52 at ¶ 45).  Plaintiff suggests that Gerson abandoned him. (*Id.*).

9

On January 13, 2012, the Superior Court vacated the sentencing order and remanded the case to the trial court. The Superior Court's *per curiam* Order states the following:

> Appellant, Raymond Francis Bronowicz, appeals from the judgment of sentence to serve a term of imprisonment of from eighteen months to thirty-six months, a sentence imposed following the revocation of a probationary sentence that had been entered after appellant pleaded guilty, in 2001, to a multitude of charges that included, inter alia, aggravated assault, simple assault, terroristic threats, and driving under the influence of alcohol. Although appellant now raises two challenges on appeal – one related to procedure and one related to the legality of the sentence – we need not address those challenges at this time, since the Commonwealth concedes that, due to an error committed at the time of sentencing, the current sentence must be vacated, and the case remanded to the trial court for a new sentencing hearing.

> Judgment of Sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

(Exhibit C, Docket No. 52-3; Docket No. 52 at ¶ 49).

G.      *Activities on Remand to Court of Common Pleas*

Upon receipt of the remand order, on March 28, 2012, Judge Machen entered an Order of Court stating that "the hearing to vacate the sentence will be held on May 1st, 2012 at 9:00 a.m." (Docket No. 75-1 at 1). On April 19, 2012, Judge Machen issued another Order directing the Superintendent of SCI Pittsburgh to transport Plaintiff to the Court of Common Pleas for the hearing. (Docket No. 75-1 at 2). Plaintiff alleges that the hearing was held on May 1, 2012, at which time Judge Machen ordered that he be released from custody. (Docket No. 52 at ¶ 49). The full text of Judge Machen's Order states that:

> AND NOW, to-wit, this 1st day of May 2012, after a hearing in open court, it is hereby ORDERED, ADJUDGED and DECREED that the sentence of 18 ½ months to 36 ½ months imposed by this court is hereby VACATED.

> IT IS FURTHER ORDERED defendant is to be paroled
> FORTHWITH.

(Docket No. 75-1 at 3).

### H. Plaintiff's Claims in this Court

The foundation for Plaintiff's claims rests on his allegations that he was improperly incarcerated for a total period of thirty months during separate terms of July 14, 2008 to July 2, 2009 and November 22, 2010 to May 3, 2012. (*Id.* at ¶ 51). Plaintiff has set forth a total of thirteen (13) claims, nine (9) of which are federal civil rights claims brought under 42 U.S.C. § 1983 and the remaining four (4) claims allege violations of his Pennsylvania Constitutional rights and state common law. (Docket No. 52). He seeks compensatory and/or punitive damages against Defendants and does not seek declaratory or injunctive relief in any of the claims in his pleading. (*Id.*).

Specifically, in Counts I, II, III, IV, and VI of his Second Amended Complaint, Plaintiff sues Probation Officers Ollis and Cima and Director McCaffrey, "in their official capacities only," alleging the following violations of Plaintiff's rights:

1. Count I – Fourth Amendment claim of unreasonable search and seizure;
2. Count II – Fourth Amendment claim of false imprisonment;
3. Count III – Fifth Amendment violation of right to self-incrimination;
4. Count IV – Sixth Amendment violation of rights to confront witnesses and access to the court; and,
5. Count VI – Fourteenth Amendment alleged violation of procedural and substantive due process rights.

(Docket No. 52 at ¶¶ 63-97). Plaintiff seeks compensatory damages at each of these counts. (*Id.*). At Counts V and VII, Plaintiff sues Ollis, Cima and Director McCaffrey in their individual capacities, alleging that they violated his rights to procedural and substantive due process set forth in

the Fourteenth Amendment (Count VII) and his rights under the Fourth, Fifth and Sixth Amendments as expressed through the Fourteenth Amendment (Count V). (*Id.* at ¶¶ 98-103). Plaintiff seeks compensatory and punitive damages for the alleged violations at Counts V and VII. (*Id.*).

Count VIII is brought against Allegheny County and Director McCaffrey in his official capacity. (*Id.* at ¶¶ 104-112). In support of these claims for money damages, Plaintiff alleges that said Defendants operated by way of unconstitutional customs and practices and engaged in an alleged failure to train and/or appropriately supervise the Defendant Probation Officers. (*Id.*). Count IX raises claims against Judge Machen in his official and individual capacities. (*Id.* at ¶¶ 113-118).

 Plaintiff seeks both compensatory and punitive damages against Judge Machen due to his alleged denial of Plaintiff's Constitutional rights by denying him the rights to free and open access to the Court; a fair hearing; and for subjecting Plaintiff to illegal sentences after his terms of probation had expired. (*Id.*). Plaintiff further claims that Judge Machen acted with deliberate indifference toward his rights and with actual malice. (*Id.* at ¶ 117).

Plaintiff's related state law claims pursue monetary relief from Defendants under the following legal theories: violation of Pennsylvania Constitution, Article I, § 8; violation of Pennsylvania Constitution, Article I, § 9 (Count XI); common law claim for intentional infliction of emotional distress (Count XII); and common law claim for malicious prosecution (Count XIII). (Docket No. 52 at ¶¶ 119-148). Plaintiff avers that this Court has supplemental jurisdiction over his related state law claims under 28 U.S.C. § 1367(a). (*Id.* at ¶¶ 124, 130, 136, 148).

III. RELEVANT PROCEDURAL HISTORY

Plaintiff commenced this lawsuit by filing his initial Complaint on July 20, 2012. (Docket

No. 1). In this Complaint, he brought claims against Allegheny County, Chief Probation Officer, Jeffrey Cima, Stephie-Anna Kapourales, Karen Ollis, and Mark Wilner. (*Id.*). Defendants responded by filing motions to dismiss the Complaint. (Docket Nos. 7-10). The parties then entered into a stipulation whereby the "Chief Probation Officer" was dismissed as a defendant. (Docket No. 15). Plaintiff opposed the motions to dismiss by filing responses and briefs in opposition to same. (Docket Nos. 19-22). Defendant Kapourales filed a motion to strike Plaintiff's brief in opposition to her motion to dismiss. (Docket No. 25). On September 26, 2012, the Court entered an order which directed Plaintiff to file an Amended Complaint, denied the motions to dismiss, without prejudice, and denied the motion to strike. (Docket No. 26).

On October 10, 2012, Plaintiff filed a motion to voluntarily dismiss Mark Wilner as a defendant in this case. (Docket No. 29). On the same day, he filed his Amended Complaint, adding a claim against Thomas McCaffrey, Director of Allegheny County Adult Probation, and restating his claims against the remaining Defendants. (Docket No. 30). All of the Defendants again moved to dismiss Plaintiff's Amended Complaint and the motions were fully briefed by the parties. (Docket Nos. 34-39, 42-44). The Court held a motion hearing on December 14, 2012 during which the parties presented oral argument on the disputed legal matters. (Docket No. 45). At the hearing, the Court raised the issue of whether certain of Plaintiff's claims were barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 478, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), or whether the claims against the probation officers were viable in light of *Barr v. Clarion County*, Civ. A. No. 08-866, 2010 WL 678512 (W.D. Pa. Feb. 23, 2010), *aff'd*, 417 F. App'x 178 (3d Cir. 2011). Supplemental briefing was ordered on these issues and other matters which were raised at the hearing. (Docket No. 45). Defendants submitted their supplemental brief in response to the Court's Order. (Docket No.

13

47). Rather than file a supplemental brief, Plaintiff voluntarily dismissed the claims against Defendant Kapourales and sought leave to file a Second Amended Complaint. (Docket Nos. 48-50). Plaintiff was granted leave by the Court to file a Second Amended Complaint given the lack of opposition to same from Defendants. (Docket No. 51; *Text Order 1/18/13*).

Plaintiff then filed his Second Amended Complaint on January 31, 2013, adding claims against the Honorable Donald E. Machen of the Court of Common Pleas of Allegheny County. (Docket No. 52). In response to same, the Court received separate motions to dismiss and supporting briefs, from: the Probation Officer Defendants in their official capacities and Allegheny County; the Probation Officer Defendants in their individual capacities; and, Judge Machen. (Docket Nos. 57, 58, 60-61, 65-66). After receiving extensions of time from the Court, Plaintiff responded to the motions to dismiss brought by the Probation Officer Defendants on April 26, 2013. (Docket No. 69). The Probation Officers filed a reply brief in support of their motions to dismiss on May 7, 2013. (Docket No. 72). Plaintiff sought another extension to respond to Judge Machen's Motion and then filed his brief in opposition to same on May 14, 2013. (Docket No. 73).

Upon review and consideration of these submissions, this Court then entered an Order on July 12, 2013, directing Defendants to file certain judicial records from the underlying state case (i.e., any court orders entered by Judge Machen after the case was remanded to the Court of Common Pleas) and which were not yet made a part of this Court's official record. (Docket No. 74). Defendants then filed the requested judicial records on July 23, 2013, including: a March 28, 2012 Order setting a hearing for May 1, 2012; an April 19, 2012 Order, directing SCI-Pittsburgh to transport Plaintiff to the May 1, 2012 hearing; and, a May 1, 2012 Order vacating the earlier sentence and ordering that Plaintiff be paroled, forthwith. (Docket No. 75).

In light of the Court's receipt of all of the foregoing submissions, the pending motions are now fully briefed and ripe for disposition.

IV. LEGAL STANDARD

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of a complaint. The United States Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009); *Twombly*, 550 U.S. at 555. As the Supreme Court made clear in *Twombly*, however, the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203,

211 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

After *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a district court must conduct the following analysis to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1947, 1950); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, 2012 WL 296904 (Apr. 2, 2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

*Twombly* and *Iqbal* have not changed the other pleading standards for a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), and the requirements of FED. R. CIV. P. 8 must still be met. *See Burtch*, 662 F.3d at 220. Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal alterations, citations, and quotations omitted). The Supreme Court has explained that a complaint need not be "a model of the careful drafter's art" or "pin plaintiffs' claim for relief to a precise legal theory" so long as it states "a plausible 'short and plain' statement of the plaintiff's claim." *Skinner v. Switzer*, --- U.S. ---, 131 S. Ct. 1289, 1296 (2011); *see also Matrixx Initiatives, Inc. v. Siracusano*, --- U.S. ---, 131 S. Ct. 1309, 1322 n.12 (2011) (emphasizing that "to survive a motion to dismiss, respondents need only allege 'enough facts to state a claim to relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 570)).

In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.,* 361 F.3d 217, 222 n. 3 (3d Cir. 2004). A document forms the basis of a claim if it is *"integral to or explicitly relied upon* in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999) (emphasis in original; internal citations and quotations omitted). Here, the Court has considered the documents submitted pertaining to Plaintiff's criminal case as such documents are public records, and are integral to and explicitly relied upon by Plaintiff in support of his claims. *Id.*

V. DISCUSSION

Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983, which provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. This statutory provision "does not create substantive rights," but instead "provides a remedy for the violation of rights conferred by the Constitution or other statutes." *Maher v. Gagne*, 448 U.S. 122, 129, n. 11, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). In order to establish a claim under the statute, a plaintiff "'must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law.'" *Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). Thus, a plaintiff cannot prevail without establishing an underlying violation of a federal constitutional or statutory right. *Collins v. City of*

*Harker Heights*, 503 U.S. 115, 119, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (remarking that § 1983 "does not provide a remedy for abuses that do not violate federal law"). "Section 1983 'itself contains no state-of-mind requirement independent of that necessary to state a violation' of the underlying federal right." *Board of County Commissioners v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (quoting *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

The first step in the Court's analysis is to "identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 841, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Here, Plaintiff contends that his Constitutional rights protected by the Fourth, Fifth, Sixth and Fourteenth Amendments have been violated. (Docket No. 52). Accordingly, in order to fully evaluate Plaintiff's § 1983 claims, the Court must independently examine the precise rights he seeks to enforce under each of these Constitutional Amendments. However, before undertaking this laborious task, the Court must address some preliminary matters raised by Defendants that may affect the disposition of his claims in this Court.

A.      *Application of Heck's Favorable Termination Rule to Plaintiff's Federal Claims*

Initially, Plaintiff's § 1983 claims seeking money damages against Defendants challenge numerous aspects of his criminal case in the Court of Common Pleas of Allegheny County, including his primary averments that he was "illegally" subjected to revocation of probation and sentenced to periods of incarceration on two separate occasions. (Docket No. 52). Defendants have raised several defenses to his claims through their motions to dismiss, including immunity defenses and asserted failures by Plaintiff to state valid causes of action in his pleading. (Docket Nos. 57, 60, 65). Because Plaintiff's claims are broad in scope and test the actions taken during his criminal case, the

Court must first examine whether Plaintiff's case is ripe for adjudication in light of the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477, 478, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and subsequent jurisprudence from the Supreme Court and United States Court of Appeals for the Third Circuit interpreting same.

In *Heck*, the Supreme Court sets forth the so-called favorable termination rule which generally requires a plaintiff to plead and prove that the underlying criminal case resulted in his favor before certain types of civil claims can be adjudicated attacking the criminal process. *See id.* To this end, the Supreme Court explained that:

> [A] district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 477. The breadth of the *Heck* doctrine has been set out repeatedly in subsequent decisions. It is now well-settled that, if applicable, *Heck* bars any claims seeking monetary damages or equitable relief which would invalidate a criminal judgment that has not been set aside. *Heck* likewise applies no matter who the defendant is, if the substance of the civil case cannot be proven without undermining the criminal judgment. *See Murphy v. Bloom*, 443 F. App'x 668, 669 (3d Cir. 2011) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81–82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005)) ("*Heck*'s favorable termination rule applies 'no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration.'"). Further, the case law is clear that a partial termination of a criminal case in plaintiff's favor or a civil case

that, if successful, would only invalidate part of a conviction or sentence, are insufficient to permit a civil case to go forward. *See Royal v. Durison*, 254 F. App'x 163, 166 (3d Cir. 2007) ("there is no indication in the opinion that *Heck* only bars claims that, if established, would invalidate an entire sentence, rather than simply part of a sentence."). Importantly, the *Heck* rule demands only that a case be dismissed, without prejudice, permitting the plaintiff to bring his claims at a later date if the conviction and/or sentence is subsequently invalidated by an appropriate tribunal. *See Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, 166 L.Ed.2d 973 (2007). However, dismissal of the civil action remains appropriate even if habeas relief is no longer available to the plaintiff and the underlying conviction cannot be invalidated in a habeas proceeding due to procedural rules or otherwise. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (citing *Giles v. Davis*, 427 F3d 197, 210 (3d Cir. 2005)) ("a § 1983 remedy is not available to a litigant to whom habeas relief is no longer available").

Turning back to the instant matter, it appears to be largely undisputed between the parties that the state court practice in probation revocation proceedings (at least the Court of Common Pleas of Allegheny County) involves the charging of probation violations with references to the counts of the original judgment entered at the time of sentencing in the underlying case. (Docket No. 52). Thus, if the initial judgment contained ten counts, listing the charges and penalties imposed separately at each count, the general practice is for those counts to maintain their character throughout the subsequent revocation proceedings. (*Id.*). For example, if, as here, count one charged the plaintiff with aggravated assault and such claim was withdrawn by prosecutors, the general practice would be for "count one, aggravated assault, withdrawn," to be reflected on subsequent charges of violations used by the probation officers and/or prosecutors and any orders entered by the Judges of the Court of

Common Pleas. Further, as no sentence of probation was imposed as to the aggravated assault charge at count one; Plaintiff could not subsequently violate the terms of his probation as to that count and/or be revoked and sentenced to incarceration for any such violation.

Plaintiff claims that this general practice was not followed in his criminal case and that the counts and charges were renumbered at various stages of those proceedings which involved an initial sentencing and three separate revocation hearings. (Docket Nos. 52, 69, 73). The thrust of Plaintiff's civil rights case in this Court is that the changes were not caused by negligent errors by probation officers, prosecutors or court staff but were the result of deliberate actions by the probation officers and/or prosecutors which were taken with the purpose of subjecting him to unlawful periods of incarceration. (*Id.*). He asserts that these actions had the effect of exposing him to additional terms of probation to which he should not have been subject and that the subsequent revocation of these probationary terms and sentences of incarceration imposed by Judge Machen in his second and third violation cases, on July 20, 2010 and January 19, 2011, respectively, were "illegal." (*Id.*). As is noted above, under *Heck*, it is Plaintiff's burden to plead and prove that he achieved a "favorable termination" in both instances. *See Heck,* 512 U.S. at 478.

With respect to the second violation case, wherein the term of probation was revoked on July 20, 2010, Plaintiff has not pled that the judgment was successfully appealed in the state system or invalidated via a writ of habeas corpus in either the state or federal courts. (*See generally* Docket No. 52). Based on this Court's review of Plaintiff's allegations, the documents from his criminal case that he has submitted as attachments to his Second Amended Complaint and the publicly available criminal docket which was previously presented in this case, it does not appear that any appeal was taken by Plaintiff from the July 20, 2010 judgment and no collateral proceedings were

initiated which were resolved in his favor. (*Id.*). Therefore, under *Heck*, all of Plaintiff's claims challenging any aspect of the July 20, 2010 judgment must be dismissed, without prejudice. *See Heck,* 512 U.S. at 478. Such dismissal includes Plaintiff's allegations concerning: the manipulation of the counts in the judgment and all other activities by the probation officers, prosecutors and court staff before the July 20, 2010 hearing; and, any actions taken during the proceedings such as the revocation of the term of probation and the imposition of the sentence. (*See* Docket No. 52). Indeed, the breadth of the *Heck* doctrine also undermines Plaintiff's claims to the extent that he complains that he was not subject to a lawful term of probation when he was accused of "smoking crack" by probation officers in November of 2010 and which led to his being charged with a third violation case. (*Id.*). As Defendants argue, because the July 20, 2010 judgment has not been invalidated, Plaintiff cannot maintain a § 1983 case by simply stating that he should not have been subject to a term of probation in November of 2010 based on his own analysis (or that of his public defender who represented him in the criminal case) of the facts and law of his case. *See Heck,* 512 U.S. at 478.

Plaintiff's other challenges to the third violation case which resulted in the sentence imposed on January 19, 2011, require some further discussion. To this end, he asserts that his constitutional rights were violated by, among other things, the procedures used by Judge Machen, the general practices of the Probation Office and lack of supervision of its probation officers by McCaffrey as the Director, and Ollis' conduct at the January 19, 2011 hearing whereby she allegedly presented a fabricated plea agreement to the Court and refused to permit Plaintiff's entrance into the courtroom for his violation hearing. (Docket No. 52). It is undisputed by the parties that Judge Machen revoked Plaintiff's probation and sentenced him to a term of imprisonment of eighteen (18) to thirty-six (36) months in a judgment entered on January 19, 2011. It is likewise uncontested that Plaintiff's

sentence was vacated by the Superior Court and that the matter was remanded to Judge Machen for another sentencing hearing. (Docket No. 52-2). On remand, Plaintiff appeared for a hearing before Judge Machen and an order was entered vacating the January 19, 2011 *sentence* and Plaintiff was paroled, forthwith. (Docket No. 75-1).

The parties' disputes with respect to the third violation case surround the scope of the Superior Court's Order. Defendants maintain that the Order vacating Plaintiff's sentence did not invalidate the Plaintiff's term of probation or hold that he was "wrongly incarcerated," such that he can now bring civil claims against them. (Docket No. 61 at 2-3). In response, Plaintiff suggests that certain assertions by the District Attorney's Office in its appellate brief, coupled with the Superior Court's Order, plainly establish that he was wrongly incarcerated and subject to revocation for violations of a non-existent probationary term. (Docket No. 69 at 16-18). As the Court has already concluded, *Heck* bars Plaintiff's claims to the extent that he argues that he was not under a valid term of probation when he was revoked and sentenced on January 19, 2011 because he has not demonstrated that the earlier July 20, 2010 judgment, which continued his term of probation, was invalidated. *See Heck,* 512 U.S. at 478.

In this Court's estimation, the remainder of Plaintiff's claims arising from the January 19, 2011 judgment are also barred by *Heck* because of the narrow scope of the Superior Court's Order, which only vacated Plaintiff's sentence and expressly declined to rule on whether the revocation of probation was illegal or if the procedures used by Judge Machen at the hearing violated Plaintiff's constitutional rights, as he asserted on appeal. *Id.* The entirety of the Superior Court's Order states that:

> Appellant, Raymond Francis Bronowicz, appeals from the

judgment of sentence to serve a term of imprisonment of from eighteen months to thirty-six months, a sentence imposed following the revocation of a probationary sentence that had been entered after appellant pleaded guilty, in 2001, to a multitude of charges that included, inter alia, aggravated assault, simple assault, terroristic threats, and driving under the influence of alcohol. **Although appellant now raises two challenges on appeal – one related to procedure and one related to the legality of the sentence – we need not address those challenges at this time**, since the Commonwealth concedes that, due to an error committed at the time of sentencing, the current sentence must be vacated, and the case remanded to the trial court for a new sentencing hearing.

Judgment of Sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

(Docket No. 52-3). Thus, the Superior Court expressly declined to rule on Plaintiff's broader challenges to the lower court's actions for which he seeks compensatory damages in this case. (*Id.*). In this regard, as Defendants now argue, the Superior Court did not: invalidate Judge Machen's revocation of Plaintiff's term of probation on January 19, 2011; deem that the term of probation was illegal; or hold that he was wrongfully incarcerated. (*Id.*). Additionally, after the case was remanded for resentencing, Judge Machen entered an Order that "the sentence of 18 ½ months to 36 ½ months imposed by this court is hereby VACATED"[2] and further ordered that Plaintiff "is to be paroled FORTHWITH." (Docket No. 75-1 at 3). Hence, Judge Machen took no further action with respect to Plaintiff's term of probation or his order revoking same which would demonstrate that the revocation aspect of the order was invalidated. (*Id.*). Instead, after the original sentence was vacated, including the maximum sentence of thirty-six (36) months, and Plaintiff had served approximately seventeen (17) months in custody on the third violation case, Judge Machen exercised

---

[2] The Court notes that the initial sentence which was imposed was for a term of eighteen (18) months to thirty-six (36) months rather than eighteen and one half (18 ½) months to thirty-six and one half (36 ½) months. (*Compare* Docket Nos. 52-1 *with* 75-1). As such, the length of the term of imprisonment stated in the later order is erroneous.

his statutory authority under 42 Pa. C.S. § 9775[3] and ordered that Plaintiff be paroled. As such, the record is clear that no court has invalidated the revocation aspect of the January 19, 2011 Order. In addition, although the sentence imposed on January 19, 2011 was vacated, a subsequent sentence of parole was imposed at the later hearing in May of 2012. Accordingly, all of Plaintiff's § 1983 claims challenging the constitutionality of the January 19, 2011 revocation proceedings must be dismissed under *Heck*, including his claims against Judge Machen, the Defendant Probation Officers (i.e., Cima, Ollis and McCaffrey) and the *Monell* claim, which alleges that the County and Director McCaffrey failed to adequately train and/or supervise the Probation Officers. *See Ash v. Township of Willingboro*, (D.N.J. Dec. 18, 2012) (citing *Munchinski v. Solomon*, 2007 WL 3121331, at *2 (3d Cir. Oct. 26, 2007)) ("claims under *Monell* require an underlying constitutional violation and, where the underlying violation is barred by *Heck*, it cannot form the basis for a derivative *Monell* claim.").

This Court believes that such a decision is fully in accord with Pennsylvania law, which generally provides that the act of revocation of a term of supervised release and the imposition of a sentence after the term of probation has been revoked constitute two separate judicial acts, each of which are appealable in their own right. For example, 42 Pa. C.S. § 9771(b) provides, in pertinent part, that "[t]he court may revoke an order of probation upon proof of the violation of specified conditions of the probation." 42 Pa. C.S. § 9771(b). Pennsylvania appellate decisions likewise recognize that the act of revocation of a sentence of probation is "committed to the sound discretion

---

[3]    With respect to the authority of the sentencing court to order a defendant paroled, 42 Pa. C.S. § 9775 provides that:

> A sentencing court shall grant parole from a term of imprisonment for less than a maximum period of two years, and, together with all probations except probation as to which supervision is specially ordered by the court as provided for under section 9721 (relating to sentencing generally), parole shall be without supervision by the board.

of the trial court" and that the Commonwealth's burden of proof to establish a probation violation is a preponderance of the evidence. *Commonwealth v. Perreault*, 930 A.2d 553, 558 (Pa. Super. Ct. 2007). The relevant statute, § 9771(b), continues that "[u]pon revocation the sentencing alternatives available to the court shall be the same as were available at the time of the initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa. C.S. § 9771(b). In addition, the scope of the Superior Court's review of a sentence following revocation "is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing." *Perreault*, 930 A.2d at 558 (citations omitted). Therefore, in order to overcome the *Heck* bar in the present factual scenario, wherein Plaintiff challenges both the purported plea agreement and the resulting sentence which was imposed, it would be incumbent on Plaintiff to plead and ultimately prove both that the revocation and sentence were invalidated by an appropriate tribunal.

In Plaintiff's situation, he took the appropriate initial step by challenging the validity of his revocation and sentence in his counseled appeal to the Superior Court. (Docket No. 52-1). It appears that the District Attorney's Office did not wholly contest all of the aspects of his appeal based on the appellate briefs he has submitted for this Court's review. (Docket No. 52-2). However, the Superior Court expressly declined to rule on the validity of Plaintiff's revocation, vacated the sentence imposed and remanded to the trial court for an additional sentencing hearing, at which time Plaintiff was paroled after having served one year, five months and eleven days in custody. (Docket Nos. 52-3; 75-1). Plaintiff has neither pled nor produced any records from the underlying state case

---

42 Pa. C.S. § 9775.

(or in any collateral habeas proceeding) which demonstrate that the revocation order was invalidated.

 (Docket Nos. 52, 69, 73).  At most, Plaintiff has established that the sentence was vacated by the

Superior Court's Order but a subsequent judgment was also entered by Judge Machen which

imposed a new sentence ordering him paroled as of that date.  (Docket Nos. 52-3; 75-1).  Thus, such

facts are insufficient, as a matter of law, to overcome the *Heck* bar because success on the merits of

any of his § 1983 claims – all of which surround the circumstances of Judge Machen's acceptance of

the plea agreement proffered by Defendant Ollis and consisted of an agreement to the revocation of

probation and the imposition of a specific sentence – would necessarily demonstrate the invalidity of

the revocation of his probation in the third violation case.  *See Royal*, 254 F. App'x at 166 ("there is

no indication in the opinion that *Heck* only bars claims that, if established, would invalidate an entire

sentence, rather than simply part of a sentence."); *see also Wilkinson v. Dotson*, 544 U.S. at 81–82

("*Heck*'s favorable termination rule applies 'no matter the target of the prisoner's suit ... if success in

that action would necessarily demonstrate the invalidity of confinement or its duration.'").[4]  As a

consequence, Plaintiff has failed to meet his burden under *Heck* and this case must be dismissed.  *See*

*Heck*, 512 U.S. at 477 ("the complaint must be dismissed unless the plaintiff can demonstrate that

the conviction or sentence has already been invalidated."); *see also Burton v. Delaware Cnty. Court*

---

[4]　　　The Court notes that the decision in *Morris v. McAllester*, 702 F.3d 187 (5th Cir. 2012) is instructive and supports the disposition of the instant case.  In *Morris*, the plaintiff was convicted in Texas state court of a number of offenses and sentenced to ten years of supervised probation.  *Id.* at 188.  After serving one-third of his sentence, the trial court terminated the remainder of his probationary term, dismissed the case against him and discharged him from any future penalties arising from the criminal activity.  *Id.*  He then brought a federal civil rights case under § 1983 against the charging officers, which was dismissed by the District Court under the *Heck* doctrine.  *Id.*  The Fifth Circuit affirmed, reasoning that the case was barred by *Heck* because the order entered by the Texas state court "does not include express language dismissing his indictment, nor does it state that his guilty plea is withdrawn, that the verdict is set aside, or that his civil liberties are restored."  *Id.* at 191.  Here, the same principles bar Plaintiff's case because the Superior Court's Order merely vacated the sentence imposed by Judge Machen and remanded the case for another sentencing hearing. Such Order did not invalidate the revocation and the subsequent Order by Judge Machen directing that Plaintiff be paroled did not invalidate the sentence, it merely reduced the time that he was required to serve in custody.

*House*, Civ. A. No. 12-4175, 2012 WL 3223691 (E.D. Pa. Aug. 7, 2012) ("Plaintiff's claims are premised on alleged constitutional deficiencies in his probation revocation hearing and the sentence he received for violating his probation. However, he does not allege that the revocation of his probation or his related sentence were invalidated or called into question by a federal court's issuance of a writ of habeas corpus.").

B.    *Alternative Bases for Dismissal*

Given the Court's decision that Plaintiff's § 1983 claims are barred under *Heck* because he has not demonstrated that the challenged convictions and sentences were fully invalidated, and that this case is subject to dismissal on this basis alone, further inquiry into such claims is not required at this time. However, because Defendants have raised additional meritorious defenses to Plaintiff's claims, the Court will briefly consider said arguments.

1.    Eleventh Amendment Immunity – Official Capacity Claims

Plaintiff has asserted a number of claims against the Defendant Probation Officers and Judge Machen in their "official capacities." (*See* Docket No. 52, Counts I-IV, VI, IX). Said Defendants argue that they are entitled to immunity from such official capacity claims under the Eleventh Amendment. (Docket Nos. 58, 66). The Court agrees that Judge Machen and the Defendant Probation Officers are entitled to Eleventh Amendment immunity as to the official capacity claims.

It is well settled that a suit against a State official in his official capacity is in fact a suit against the State. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed.2d 114 (1985). Eleventh Amendment immunity protects non-consenting States from federal suits brought by private parties. *Hayburger v. Lawrence County Adult Probation and Parole*, 551 F.3d 193, 197 (3d Cir. 2008). The United States Court of Appeals for the Third Circuit has recognized that Pennsylvania's

judicial districts are entitled to Eleventh Amendment immunity, including elected Judges and Probation Departments. *See Haybarger*, 551 F.3d at 198 (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005)). Thus, Judges and employees of the Probation Departments are generally afforded Eleventh Amendment immunity from suits brought against them in their official capacities. *Id.*

"Eleventh Amendment immunity is applicable unless abrogated by an Act of Congress or waived by the State." *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F. Supp. 2d 672, 694 (W.D. Pa. 2009) (Fischer, J.) (citing *Lombardo v. Penn. Dep't. of Pub. Welfare*, 540 F.3d 190, 195-96 (3d Cir. 2008)). Plaintiff claims that the Court of Appeals' decision in *Haybarger* demonstrates that the Probation Officers have waived Eleventh Amendment immunity because the Allegheny County Probation Department allegedly receives federal funding. (*See* Docket Nos. 52, 69, 73). This argument lacks merit because Plaintiff brought his claims under 42 U.S.C. §1983, which does not remove the immunity, *Quern v. Jordan*, 440 U.S. 332, 345, 99 S. Ct. 1139, 59 L.Ed.2d 358 (1979), while the claims at issue in *Haybarger* were brought under the Rehabilitation Act, where the immunity has been expressly waived, *Haybarger*, 551 F.3d at 198. Indeed, caselaw has fully established that because Pennsylvania retained its Eleventh Amendment immunity from § 1983 suits, *see* 42 Pa.C.S. §§ 8521-22, none of the named Defendants can be sued in their official capacities under §1983. *See e.g.*, *Quern*, 440 U.S. at 345; *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 60-71, 109 S.Ct. 2304 (1989), *Van Tassel*, 659 F. Supp. 2d at 694. Moreover, as a suit against a State official in his official capacity is in fact a suit against the State, none of the named Defendants qualify as a "person" who is potentially subject to monetary damages under § 1983.[5]

---

5       A judicial official is an eligible "person" under §1983 when the plaintiff seeks only prospective relief under the

*Kentucky*, 473 U.S. at 166; *Will*, 491 U.S. at 60-71. Thus, the claims against the named Defendants in their official capacities seeking monetary damages (Counts I, II, III, IV, VI, IX) are dismissed, with prejudice.

### 2. Judicial Immunity

Judge Machen also argues that he is entitled to absolute judicial immunity against any claims (in his official and individual capacities) for monetary damages for actions taken in his judicial capacity. (Docket No. 66). "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts," *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006), "even if his exercise of authority is flawed by the commission of grave procedural errors," *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *see also Figueroa v. Blackburn,* 208 F.3d 435, 440 (3d Cir. 2000) ("It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'"). A judge's absolute immunity can only be overcome if the alleged action had a nonjudicial nature, or where the judge acted in a "complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (citing *Forrester v. White*, 484 U.S. 219, 227-29, 108 S.Ct. 538 (1988)). In this Court's opinion, Plaintiff has not demonstrated that either of these factors has been established in this case.

First, a judicial act is determined by examining the "nature of the act itself, whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they

---

statute, and is not treated as an action against the State. *Haybarger*, 659 F.3d at 696; *see also Hafer v. Melo*, 502 U.S. 21, 22-31 (1991); *Ex parte Young,* 209 U.S. 123,154 (1908) (quoting *Smyth v. Ames*, 169 U.S. 466 (1898)). "'It is the settled doctrine of this court that a suit against individuals, for the purpose of preventing them, as officers of a state, from enforcing an unconstitutional enactment…is not a suit against the state within the meaning of [the Eleventh] Amendment.'" However, even the most liberal reading of Plaintiff's Second Amended Complaint discloses that this action is seeking only compensatory and punitive damages, rather than any prospective, declaratory or injunctive relief. (*See* Docket No. 52). As such, any further discussion of whether he has adequately pled claims for prospective declaratory and/or injunctive relief would be purely academic.

dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. As already discussed, all of Plaintiff's claims involve actions undertaken while Judge Machen was presiding over Plaintiff's criminal case in the Court of Common Pleas of Allegheny County Criminal Division. (Docket No. 52). The actions challenged by Plaintiff include the acceptance of plea agreements, revocation of Plaintiff's probationary terms and imposition of sentences. (*Id.*). There can be no real dispute that such actions by Defendant Judge Machen occurred while he was acting in a function normally performed by judges rather than administrative tasks and therefore, all of his actions constitute "judicial acts." *See Stump*, 435 U.S. at 362.

Second, to the extent that Plaintiff maintains that Judge Machen acted without jurisdiction, Judge Machen sits on the Allegheny County Court of Common Pleas, which is a court of general jurisdiction in the Commonwealth. *See* 42 Pa.C.S. § 931(a) ("the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas."). When considering the limits of jurisdiction for the purposes of immunity, it must be construed broadly, *Figuera v. Blackburn*, 208 F.3d 435, 443 (3d Cir. 2000), and jurisdiction remains even if the judicial officer "commit[ed] grave procedural errors," *Stump*, 435 U.S. at 359, "or because a judge has conducted a proceeding in an 'informal and *ex parte* manner,'" *Forrester*, 484 U.S. at 227. Further, "[j]udicial immunity cannot be overcome by allegations of bad faith or malice." *Goldhaber v. Higgins*, 576 F. Supp. 2d 694, 703 (W.D. Pa. 2007). Here, the genesis of Plaintiff's claims against Judge Machen are that he intentionally violated Plaintiff's Constitutional rights by failing to adhere to certain state procedural rules, which generally require that a criminal defendant is entitled to be present for all proceedings, absent an affirmative waiver, and that all such judicial proceedings must be transcribed. (Docket No.

52). Specifically, Plaintiff contends that Judge Machen's decision to accept the purported plea agreement presented to him by Defendant Ollis, without requiring Plaintiff's presence in court, or directing a court reporter to make an official record of the proceedings, violated his Constitutional rights and subjects Judge Machen to liability under § 1983. (*Id.*). Even accepting Plaintiff's allegations as true, at most, Judge Machen committed "grave procedural errors" or acted informally and *ex parte* in violation of Pennsylvania law but such errors are simply not a sufficient basis to overcome the broad judicial immunity afforded to him. *See Stankowski v. Farley*, 251 F. App'x 743 (3d Cir. 2007) (holding that judicial immunity applied to bar suit alleging that Judge "imposed an illegal sentence," failed to address motions, "failed to state a plea agreement in open court," and "failed to announce [plaintiff's] sentence in open court."). Accordingly, Plaintiff's claims seeking monetary relief against Judge Machen (in both his official and individual capacity) at Count IX must be dismissed, with prejudice.

3. <u>Additional Arguments</u>

Defendants have raised additional affirmative defenses to Plaintiff's § 1983 claims and further contend that such claims are subject to dismissal for failure to state a claim upon which relief may be granted. (Docket No. 61). Plaintiff naturally contests these arguments. (Docket No. 69). In light of the Court's ruling that Plaintiff's claims are barred under the *Heck* doctrine and therefore, such claims have yet to accrue, *see Wallace*, 549 U.S. at 393, the Court declines to further rule on these disputed matters. If Plaintiff successfully invalidates the challenged convictions and sentences, as required under *Heck*, and then resubmits his § 1983 claims against Defendants, these arguments are preserved and may be presented to the appropriate court for adjudication.

C.    *Leave to Amend*

In civil rights cases, leave to amend generally should be granted *sua sponte*, even if the plaintiff does not affirmatively seek leave to amend. *See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251-52 (3d Cir. 2007). However, leave to amend may be denied if further amendment of the complaint would be futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434 ("Among the grounds that justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice and futility.")). Here, presently at issue is Plaintiff's Second Amended Complaint, or his third attempt at pleading cognizable claims against the Defendants based on the circumstances surrounding his criminal case in the Court of Common Pleas of Allegheny County. (Docket No. 52). Each of his prior pleadings were met with motions to dismiss raising similar arguments, but Plaintiff still has been unable to successfully plead causes of action. Indeed, as is fully explained herein, the Court has now determined that: (1) Plaintiff's § 1983 claims are not presently cognizable under *Heck*'s favorable termination rule; (2) Defendants are entitled to Eleventh Amendment immunity as to all official capacity claims brought against them; and (3) Judge Machen is entitled to judicial immunity as to all claims brought against him. Given these rulings, the Court finds that leave to amend Plaintiff's § 1983 claims would be futile and leave to amend the complaint a third time will not be granted. *See Shane*, 213 F.3d at 115.

D.     *Supplemental Jurisdiction over State Law Claims*

The only remaining matters for the Court to address are Defendants' challenges to Plaintiff's state claims arising under the Pennsylvania Constitution and state tort theories which Plaintiff has initiated under this Court's supplemental jurisdiction. (Docket Nos. 52). Because the Court has dismissed all of Plaintiff's federal claims, the Court has discretion to decline to exercise

supplemental jurisdiction over the state law claims. *See* 28 U.S.C. 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); *see also Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). In the interests of judicial economy, the Court hereby declines to exercise supplemental jurisdiction over Plaintiff's state law claims and such claims will be dismissed, without prejudice.

VI. CONCLUSION

Based on the foregoing, Defendants' motions to dismiss [57], [60], [65] are granted and Plaintiff's Second Amended Complaint [52] is dismissed. An appropriate Order follows.


*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: October 21, 2013

cc/ecf: All counsel of record